### REZA v. INTERNATIONAL–GREAT NORTHERN R. CO.   (No. 7397.)*

(Court of Civil Appeals of Texas.   San Antonio.   Oct. 14, 1925.   Rehearing Denied Nov. 18, 1925.)

**1. Railroads ☞400(7)—Evidence held not to raise issue of negligent speed proximately causing injury.**

In action for injuries to infant struck by train, evidence *held* not to raise issue of whether train was being operated at a negligently excessive speed, and whether such negligence proximately caused plaintiff's injury.

**2. Trial ☞140(1)—Court's province to determine probative force of testimony of witness testifying by deposition.**

As neither court nor jury was permitted to appraise credibility of witness testifying by deposition by personal observation of his appearance or manner of testifying, it was within province of court to determine probative force

of his testimony by excluding from jury issue raised thereby.

**3. Railroads ☞400(6)—Evidence held not to raise issue whether signals were seasonably given.**

In action for injuries sustained by infant struck by train, negative evidence *held* not to raise issue of whether train whistle was seasonably sounded and bell rung prior to accident.

**4. Railroads ☞400(14)—Evidence held not to raise issues of discovered peril of infant.**

In action for injuries sustained by infant struck by train, evidence *held* not to raise issue of discovered peril. <

**5. Railroads ☞400(4)—Evidence held not to raise issue of negligence in failure to fence right of way.**

In action for injuries sustained by infant struck by train, evidence *held* not to raise issue of defendant's negligence in failing to fence right of way at place of accident.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Action by Ramon Reza, by next friend, against the International-Great Northern Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Sam Belden, H. C. Carter, Champe G. Carter, Randolph L. Carter, and Perry J. Lewis, all of San Antonio, for appellant.

Andrews, Streetman, Logue & Mobley, of Houston, and F. C. Davis, Marshall Eskridge, and A. L. Matlock, all of San Antonio, for appellee.

SMITH, J. Appellant, a 15 month old boy, was struck and injured by one of appellee's freight trains as it passed through a populous residential district of the city of San Antonio. The child lived with his parents in their home adjoining appellee's right of way near its intersection with Mistletoe avenue. At the place of the accident the railway track rested upon a dump, about five feet above the level of the right of way and adjacent premises. The child, which had been playing in the yard with an older sister, while the mother was busy about her household duties, escaped their notice, and wandered onto the dump. A switch engine, backing and pulling a string of tank cars, passed the point shortly before the accident occurred, from which it must be inferred that the child was struck immediately after reaching its perilous position. Its mother, hearing the train approach, walked to her door, looked out, and saw the child standing between and near the end of two cross-ties, when the train struck it. The train, without pausing, proceeded on its way into San Antonio. This suit followed.

Appellant based his suit upon the contention that the accident was proximately caused by the negligence of appellee in that (1) the employees operating the train in ques-

tion failed to keep a proper lookout; (2) to sound the train whistle; (3) to ring the bell; and (4) operated the train at an excessive rate of speed; (5) that appellee failed to have its right of way fenced; and (6) permitted weeds and grass to grow on the right of way; and (7) appellant also pleaded discovered peril. The trial court refused to submit any of the issues thus pleaded, except that of proper lookout, which the jury resolved in favor of the railway company. From the resulting adverse judgment the plaintiff below has appealed, solely upon the grounds that the court erred in refusing to submit the rejected issues to the jury.

The railway company impleaded the engineer and fireman of the train in question, but the finding in favor of the railway company had the effect of eliminating them from the case, which will be disposed of on this appeal without further reference to them.

Appellant's first proposition is directed at the refusal of the trial court, upon proper request, to submit to the jury the issue of whether or not appellee's train was being operated at a negligently excessive speed at the time it struck appellant, and whether or not such negligence proximately caused the injury to appellant. The whole of appellant's case in support of this issue was contained in the testimony of appellant's mother that "the train was running very fast, I don't know how fast it was, but it was very fast," and of one Munoz, who testified by deposition that "I judge the train was running 15 miles an hour at the time and before the injury to the child." The train which struck appellant consisted of nearly 40 cars, and was about a quarter of a mile long. It was coming into San Antonio from the north, having made the run from Bracken, 18 miles distant, in 80 minutes, or an average speed of about 11 miles an hour. When it reached Summit avenue, 3 or 4 blocks from the place of the accident, it was brought to a full stop for the switch engine and oil tanks, which had come onto the main line tracks from a nearby oil refinery. When this switch engine had moved out ahead, the train was started, and followed along at an interval of 2 or 3 blocks. The switch crew testified that they moved down into town at a speed of 5 to 7 miles an hour, and the crew on the train following testified that the latter, keeping its distance behind the switch engine and tank cars, moved at a rate of 5 to 8 miles an hour. The train had started from a full stop at Summit avenue, and had proceeded only 3 or 4 blocks when the accident occurred. The foregoing facts, testified to positively and directly by the two engine crews, was not gainsaid upon the trial except by the general statement of appellant's mother that the train was moving "very fast," and the statement contained in the deposition of Munoz that he "judged" the speed of the train to be 15 miles an hour. Thus

arises the bald question of whether or not the train was moving at a negligently excessive speed at the time and place of the accident. It should be added here that both the ordinances of the city of San Antonio and the rules of appellee railway company prohibited a speed in excess of 10 miles an hour at this point; and there was evidence from which a jury could have found that nearby intersecting streets were among those most frequently traveled in the city, and that pedestrians frequently travel back and forth upon the railway tracks and right of way at the point of the accident. The question is whether or not in this state of the record the trial court erred in determining that the testimony of appellant's mother and of the witness Munoz was so weak and of so little probative force as to raise no more than mere suspicion or surmise of negligence in the matter of the speed of the train, and that this surmise was overwhelmed by the direct and positive testimony of appellee's witnesses, considered in connection with the physical facts which enveloped the transaction.

[1, 2] We have carefully examined the record with reference to this question. That the evidence offered by appellant upon this issue is extremely weak cannot be gainsaid. The statement of appellant's mother that the train was "running very fast" means but little, indeed, when its general nature and the witness' lack of opportunity for sanely approximating the speed of the train are considered. "Very fast" is a purely relative term. When standing alone it is too indefinite and elastic to furnish the basis for a verdict. The witness using the term here was the mother of the injured boy. She did not see the train until the moment it struck him, and it is inconceivable that her judgment as to the speed of the instrument of her child's misfortune, exercised in that moment of her extreme terror and expressed in indefinite and general terms, was of dependable accuracy and value in ascertaining and determining the specific fact of the speed of the train. There remains, then, but the one isolated statement of the witness Munoz that in his "judgment" the train was moving at a speed of 15 miles an hour when it struck appellant. This witness, a day laborer, who happened to be in the vicinity at the time, was not shown to have any qualification for judging the speed of a passing train, nor any particular opportunity of determining the approximate speed of this train. According to his testimony, he was walking down the track ahead of the train. As the latter approached near him, from the rear, he stepped off the track, and stood aside until it passed him. His judgment as to the speed of the train was formed out of these circumstances. The trial court evidently did not regard his unsupported testimony of sufficient probative force to raise more than a suspicion of negligence on the part of appellee, as this wit-

ness testified by deposition only, and, as neither court nor jury was permitted to appraise his credibility by personal observation of his appearance or manner of testifying, it was within the province of the court to determine the probative force of his testimony. We cannot say from the record that the court abused its restricted discretion in so determining the matter, and in support of the right action of that tribunal we overrule appellant's first proposition.

[3] In his second and sixth propositions appellant complains of the refusal of the trial court to submit to the jury the issue of whether or not the train whistle was seasonably sounded and the bell rung prior to the accident. No witness testified that the whistle was not sounded or that the bell was not rung. The whole of the plaintiff's evidence upon this issue was embraced in the testimony of appellant's mother, the witness Munoz, and a neighbor that they did not hear these signals given, but this purely negative testimony did not have the effect of removing the burden resting upon the plaintiff to affirmatively establish the specific facts. Opposed to this evidence was the direct and positive testimony of several witnesses that both signals were seasonably given by the train operatives. We do not think the court erred in refusing to submit these issues, and we overrule the proposition mentioned.

[4] Appellant complains of the refusal of the court to submit the issue of discovered peril, but we overrule the third proposition, in which the complaint is made. The evidence shows that a clear, straight track led to the point of the accident. The evidence showed, and the jury found, that the train operatives kept a proper lookout for objects on the track. Appellant depends upon these two facts, alone, to raise the issue of discovered peril. In the state of the record, however, they are not deemed sufficient for that purpose. The train crew testified definitely and positively that they did not see the child; that they knew nothing of the accident until after they signed off at the end of their run, when they were informed of it by others who had in the meantime heard of it. In a sense, their testimony is supported by the fact that they did not stop or check the speed of the train when the accident occurred, but continued on to the end of their run at the San Antonio terminal. While it is obvious that this circumstance is of itself by no means conclusive of the fact that the train operatives did not discover the peril of the child, yet, without the aid of affirmative evidence, no court should indulge the inference that any person or group of persons would knowingly run a train over and crush an innocent baby, and then proceed nonchalantly on their way without heed, and without pausing to offer aid. Appellee, in this connection, calls attention to the fact that, because motorists frequently run over persons and other vehicles without stopping to render aid, the Legislature of the state felt impelled to fix a substantial penalty against those malefactors, but it is well known that that law was designed to reach a very different class of persons than railway train operatives. At the time it was struck the child was standing between and near the end of two cross-ties. No one but its mother saw the child's peril, and she did not discover it until the moment of the impact. Munoz, plaintiff's witness, who had been walking down the track, in front of the approaching train, was standing beside the track only 25 feet away when the child was struck, and testified that he did not see the child, or know of its peril, until the accident had happened and 15 cars of the train had passed the place of the accident. The train operatives testified they never did see the child until the case was tried months afterwards. The physical facts raise a conclusive inference that the child must have reached its perilous position at the very moment of, or at least immediately before, the accident. A few moments before he had been playing with his sister in the yard, 50 to 75 feet away, when the sister absented herself on a brief errand, leaving him alone. The train in question was preceded, at a distance of only 2 or 3 blocks, by the switch engine and tank cars, and even at the slow rate at which the train movements were made their passages by the place of the accident were necessarily separated by the briefest intervals. The child was not on the track or dump when the tank cars passed, nor was he seen by the switch crew. In this state of the record we think the trial court correctly held that the issue of discovered peril was not raised.

[5] In his fourth proposition appellant complains of the refusal of the court to submit the issue of whether or not appellee was guilty of negligence in not having its right of way fenced at the place of the accident. There is nothing in the record to warrant the submission of that issue, and the proposition will be overruled, as will appellant's fifth and seventh propositions, for a like reason.

The judgment is affirmed.